UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORTEZ A. REX, | ) NO. CV 13-03011-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on May 6, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). (ECF No. 3.) On September 30, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 10.) The parties filed a Joint Stipulation ("Joint Stip.") on February 13, 2014, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 18.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed an application for a period of disability and DIB on March 10, 2010. (Administrative Record ("A.R.") 15.) Plaintiff, who was born on October 10, 1957 (*id.* 98),[1] claims to have been disabled since August 28, 2009, due to hypertension, diabetes, arthritis, and mental health conditions (*id.* 15, 171.) Plaintiff has past relevant work experience as a "Math Teacher," Dictionary of Occupational Titles ("DOT") No. 090.227-022. (A.R. 24.)

After the Commissioner denied plaintiff's claim initially, plaintiff requested a hearing. (A.R. 15.) On August 24, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Stuart M. Kaye (the "ALJ"). (*Id.* 15, 25.) Medical experts Harvey Alpern, M.D., and David B. Peterson, Ph.D., and vocational expert, Sandra Schneider, also testified. (*Id.* 15, 41, 44, 50.) On September 6, 2011, the ALJ denied plaintiff's claim. (*Id.* 15-25.) Plaintiff asked the Appeals Council to review the ALJ's decision and submitted additional evidence -- an evaluation and treatment notes from plaintiff's treating clinical psychologist -- for the Appeals Council's consideration. (*Id.* 6-9.) On February 27, 2013, the Appeals Council denied plaintiff's request for review. (*Id.* 2-6).

## SUMMARY OF ADMINISTRATIVE DECISION

In his September 6, 2011 decision, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and plaintiff has not engaged in substantial gainful activity since August 28, 2009, the alleged onset date of his disability. (A.R. 17.) The ALJ determined that plaintiff has the severe impairments of: hypertension; diabetes; gout; major depressive disorder single episode, moderate; panic disorder without agoraphobia;

---

[1] On the alleged disability onset date, plaintiff was 48 years old, which is defined as a younger individual. (*See* 20 C.F.R. § 404.1563.)

psychological factors affecting medical condition;[2] insomnia; and sleep disorder. (*Id.* 17-18.) The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* 19.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR [§] 404.1567(b) . . . [and] can lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk 6 hours in an 8-hour work day, sit 6 hours in an 8-work day, and he can handle and finger bilaterally on an occasional basis." (A.R. 20-21.) The ALJ found that plaintiff was capable of performing his past relevant work as a Math Teacher (DOT No. 090.227-022), because "[t]his work does not require the performance of work-related activities precluded by [plaintiff]'s [RFC]." (*Id.* 24.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from August 28, 2009, the alleged onset date, through September 6, 2011, the date of the ALJ's decision. (*Id.* 24-25.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

---

[2] The Court notes that this particular impairment is not well-defined; the specific "psychological factors" at issue are not identified.

3

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (citing Connett, 340 F.3d at 874). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination . . . .'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges two sources of error. First, plaintiff claims that the ALJ erred in finding that plaintiff could do his past relevant work. (Joint Stip. at 4.) Second, plaintiff claims the ALJ did not properly evaluate plaintiff's credibility. (*Id.*)

**I. Any Error In The ALJ's Decision Regarding Plaintiff's Past Relevant Work Is Harmless.**

Plaintiff argues that the ALJ committed reversible error at step four in finding that plaintiff

could perform his past relevant work. Plaintiff contends that the ALJ ignored contradictory evidence, including: the opinion of Alexis Meshi, M.D., who performed a psychiatric consultative examination and found that plaintiff "would be able to follow simple one and two part instructions" (Joint Stip. at 7-9 (citing A.R. 27)); the opinions of the non-examining medical expert, David Peterson, M.D., and the treating clinical psychologist, Gunilla Karlsson, Ph.D., who purportedly expressed concern about plaintiff's ability to return to his past employment (Joint Stip. at 10 (citing A.R. 50, 564));[3] and the medical/vocational analysis prepared by the Social Security Agency, which found that plaintiff was unable to return to his past relevant work (Joint Stip. at 11 (citing A.R. 192-94)). Plaintiff also contends that the ALJ failed to present the Vocational Expert ("VE") with the full range of plaintiff's limitations, rendering the VE's opinion that plaintiff could perform his past relevant work invalid. (Joint Stip. at 11-13 (citing A.R. 51-52).)

The Court assumes *arguendo* that plaintiff is correct that the ALJ erred in determining that plaintiff could perform his past relevant work but finds that any such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, the ALJ observed that "treating sources agree that the claimant is able to return to the work force." (A.R. 24.) Plaintiff does not refute this assertion, and the record resoundingly supports it.

Specifically, the record contains the conclusions and observations of he following nine doctors, psychiatrists, and psychologists: Dr. Karlsson, plaintiff's treating psychologist; Dr. Meshi,

---

[3] The Court notes that, contrary to plaintiff's contention in the Joint Stipulation, Dr. Peterson never expressly stated that plaintiff should or could not return to teaching generally. (*See generally* A.R. 49-50.) Instead, Dr. Peterson stated that, with respect to plaintiff's prior job with the Los Angeles Unified School District, it would probably not be the "best idea" for plaintiff to return to *that particular* employment, as it involved what plaintiff perceived as a "heavy workload," and "there were . . . criticisms levied on his response to that workload and then attacks on him personally." (*Id.* 50.)

5

1 an examining board-eligible psychiatrist; Dr. Greils, an examining psychiatrist and Qualified
2 Medical Examiner; Dr. Peterson, a non-examining psychological expert; Haleh Safavi, M.D., an
3 examining board-certified internist; L.C. Chiang, M.D., a Disability Determination Services medical
4 source; Harvey Alpern, M.D., a non-examining board certified internist and cardiology expert; M.
5 Salib, M.D., a consulting psychiatrist; and Maria Brickman, M.D., neurologist and Qualified Medical
6 Evaluator.  None of these medical professionals suggested that plaintiff was unable to work.
7 Instead, Dr. Karlsson, plaintiff's treating clinical psychologist, opined that plaintiff's "[r]eturn to
8 the labor market would be the most beneficial form of intervention from a psychological
9 standpoint." (A.R. 565.)  Similarly, Dr. Greils examined plaintiff and determined that "[plaintiff]
10 would be able to perform his customary duties at an alternative school with only slight
11 impairment." (*Id.* 370.)  Dr. Peterson, the non-examining medical expert, agreed that plaintiff
12 might find employment opportunities that would be "more suitable" than his position with the Los
13 Angeles Unified School District and that plaintiff should "try another employment situation that
14 matches his qualifications." (*Id.* 49.)  These opinions were supported by the findings of:  Dr.
15 Brickman, who observed that plaintiff had a fair to good memory and exhibited good concentration
16 and normal intellectual functioning (*id.* 281); Dr. Salib, who found that plaintiff had only mild
17 limitations in social functioning and concentration (*id.* 263); and Dr. Meshi, who concluded that
18 plaintiff had no cognitive deficits and could interact well with others (*id.* 247).

20 In view of the overwhelming evidence that plaintiff not only was able to return to the labor
21 market but also was strongly advised to do so by his treating clinical psychologist, Dr. Karlsson,
22 any error in the ALJ's determination that plaintiff was able to perform his past relevant work was
23 "inconsequential to the ultimate nondisability determination."  *See* Molina, 674 F.3d at 115
24 (quoting Carmickle, 533 F.3d 1155, 1162 (9th Cir. 2008)); *see also* 20 C.F.R. § 404.1520(g)(1)
25 ("If you can make an adjustment to other work, we will find you not disabled.").  For this reason,
26 the error asserted in plaintiff's first contention is harmless and not a ground for reversal and
27 remand.

**II.     Plaintiff's Subjective Pain Complaints.**

Plaintiff also challenges the ALJ's rejection of plaintiff's subjective pain complaints in his determination of plaintiff's RFC. (*See* Joint Stip. at 21-24.) The ALJ determined that plaintiff could perform "light work," adding that plaintiff retained the capacity to "lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk 6 hours in an 8-hour work day, sit 6 hours in an 8-hour work day, and he can handle and finger bilaterally on an occasional basis." (A.R. 20-21.) Plaintiff contends that this assessment conflicts with complaints he made about his condition in his 2010 Function Report and to various medical sources. (Joint Stip. at 21 (citing A.R. 189 (8/6/10 - plaintiff wrote on his 2010 Function Report that he can lift five pounds), 190 (8/6/10 - plaintiff wrote on his 2010 Function Report that he handles stress "not well"), 191 (8/6/10 - plaintiff wrote on his 2010 Function Report that he is "in a constant battle with serious depression, along with anxiety and stress"), 278 (2/15/10 - plaintiff complained to Maria Brickman, M.D., a neurologist with the Insomnia Medical Center, that he has "persistent insomnia, difficulty falling asleep, nighttime awakenings, stress, pain, poor concentration, forgetfulness, irritability, daytime sleepiness, daytime tiredness, and poor daytime functioning"), 549 (9/6/11 - plaintiff reported to Dr. Karlsson that he "experiences crying spells six or seven times a week").)

The ALJ acknowledged plaintiff's reports of depression with suicidal thoughts, "'crippling'" arthritis, difficulties using his hands and getting along with others, and impairments in performing lifting and postural activities.[4] (A.R. 21 (quoting *id.* 191).) However, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they conflicted with the ALJ's assessment of plaintiff's RFC. (*Id.* 22.) The ALJ reasoned that "[i]n terms of [plaintiff's] alleged fatigue and functional debilitation, records from Kaiser reflect improvement in [his] diabetes and blood pressure with conservative treatment," and plaintiff's complaints about the intensity, persistence, and limiting effects of his

---

[4] Postural activities involve climbing, stooping, kneeling, crouching, crawling, and reaching.

7

symptoms were inconsistent with: (1) his ability to perform a variety of daily living activities independently; (2) the opinions of the medical sources, who all agreed that plaintiff could lift 10 pounds frequently and 20 pounds occasionally and that plaintiff was mentally and emotionally capable of returning to the work force; and (3) some of the statements made by plaintiff's god-brother on the Third Party Function Report, which included reporting that plaintiff went to the gym on a regular basis. (*Id.*)

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.2002); *see also* 20 C.F.R. § 404.1529(c). The ALJ considered these factors in this case, observing that there were inconsistencies between plaintiff's statements and his daily activities and that statements from physicians and third parties refuted plaintiff's allegations about the nature, severity, and effect of his symptoms. (A.R. 22.)

The ALJ's first reason for rejecting the plaintiff's credibility was that plaintiff's diabetes and blood pressure improved with conservative treatment. (A.R. 22.) Generally, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an

8

impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); *see, e.g.*, Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where, as here, however, the plaintiff alleges disabling impairments beyond those that respond well to conservative treatment, the ALJ cannot use conservative treatment as the sole basis for discounting the plaintiff's credibility concerning the effect of the *totality* of his impairments. *See* Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace."). However, the ALJ properly cited numerous other reasons for discounting plaintiff's credibility, *i.e.* plaintiff's ability to perform a variety of daily living activities independently, the opinions of the treating and examining doctors, and plaintiff's god-brother's statements on the Third Party Function Report. (*See* A.R. 22-24.)

First, the ALJ found that the plaintiff's daily activities, as described by plaintiff and his god-brother, Terone Hughes, in the Function Reports, were inconsistent with plaintiff's alleged limitations. (*See* A.R. 22-23.) According to these Reports, plaintiff performs the following activities on a daily basis: running errands; walking in a park or in a mall for at least an hour;[5] attending Bible Study; and attending either a prayer meeting or choir rehearsal. (*Id.* 184 (plaintiff's Function Report), 176 (Third Party Function Report).) The Function Reports also indicated that plaintiff: goes outside every day (*id.* 179, 187); shops in stores twice a week (*id.*); visits the gym on a regular basis (*id.* 188); participates in singing, acting, and/or dancing weekly (*id.* 180, 188); and does household chores -- namely, laundry, vacuuming, and dish washing -- five times a week without help or encouragement. (*Id.* 186.) In addition, two or three times a week, Hughes and plaintiff get together to "rehearse dramas." (*Id.* 176.)

As described by plaintiff and Hughes, plaintiff leads a physically and socially active lifestyle

---

[5] Plaintiff also stated, however, that his hour-long walks made him dizzy and he fought through the pain and discomfort only because the daily walks helped with his hypertension and diabetes. (A.R. 184, 191.)

that cannot be reconciled with plaintiff's allegations of disabling depression, anxiety, insomnia, and arthritis. Although an ALJ is generally required to explain how a claimant's daily activities either conflict with his alleged limitations or translate into the ability to perform full-time work, *see* Vertigan v. Halter, 260 F.3d 1040, 1050 (9th Cir. 2001); Hunter v. Astrue, 874 F. Supp.2d 902, 914 (C.D. Cal. 2012), here the conflict between plaintiff's description of his limitations and his daily activities is self-evident. *See* Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of [his] day performing household chores or other activities that are transferable to a work environment.")

Second, the ALJ's credibility determination was overwhelmingly supported by the medical evidence. As the ALJ observed, the medical experts' findings were universally consistent with the ALJ's assessment of plaintiff's RFC. (*See* A.R. 22-24.) More specifically, Dr. Safavi, an examining board-certified internist, Dr. Alpern, a non-examining board certified internist and cardiology expert, and Dr. Chiang, a Disability Determination Services medical source, agreed that plaintiff could lift 10 pounds frequently and 20 pounds occasionally and could stand or walk for 6 hours in an 8-hour day. (A.R. 22-23; *see also id.* 42 (Dr. Alpern's opinion of plaintiff's physical abilities), 241-42 (Dr. Safavi's opinion of plaintiff's physical abilities), 249 (Dr. Chiang's opinion of plaintiff's physical abilities).) With regard to plaintiff's social and cognitive limitations, Dr. Salib, a consulting psychiatrist, found that plaintiff had only mild limitations in social functioning and concentration, persistence, and pace. (A.R. 23; *see also id.* 263 (Dr. Salib's opinion).) Dr. Meshi, an examining board-eligible psychiatrist, similarly found that plaintiff had no cognitive deficits, could interact well with others, and could maintain concentration and attention although he "might have mild difficulty with pace and standing stress inherent in a work environment." (A.R. 23; *see also id.* 247.) Dr. Greils, an examining psychiatrist and Qualified Medical Examiner, opined that plaintiff could perform his past relevant work as a math teacher. (A.R. 23; *see also id.* 370.) Dr. Karlsson, plaintiff's treating psychologist, encouraged plaintiff to return to the work force (A.R. 23; *see also id.* 299), and Dr. Peterson, a non-examining psychological expert, testified that plaintiff was a candidate for vocational rehabilitation and agreed with the view that plaintiff could find suitable

employment (A.R. 23; *see also id.* 49-50). In sum, there was overwhelming and compelling medical evidence supporting the ALJ's assessment of plaintiff's RFC and, in turn, the ALJ's determination that plaintiff was not credible to the extent that he alleged limiting symptoms that were inconsistent with that assessment.

Given that plaintiff's hypertension and diabetes improved with conservative treatment, his daily activities were inconsistent with his allegations of debilitating depression, anxiety, insomnia, and arthritis, and the medical evidence overwhelmingly showed that plaintiff was capable of performing light work with minimal limitations, the ALJ did not err by discounting plaintiff's subjective complaints in determining plaintiff's RFC.  Furthermore, because the medical professionals agreed that plaintiff was capable of working, any error in the ALJ's credibility determination had no effect on the ALJ's ultimate nondisability determination and, therefore, was harmless.  *Cf.* Stout, 454 F.3d at 1056 (a reviewing court may consider an error harmless if it "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination"); *see also* Molina, 674 F.3d at 1115 ("an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

1  Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

3  **LET JUDGMENT BE ENTERED ACCORDINGLY**.

5  DATED: September 3, 2014

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE